In the Matter of Fred Gilmer **SAUNDERS, Jr.,** Bankrupt.

No. 73–BK–20–R.

United States District Court, W. D. Virginia, Roanoke Division.

Sept. 2, 1973.

**1352**

Ralph A. Glasgow, Roanoke, Va., for bankrupt.

## OPINION and ORDER

TURK, District Judge.

This case is before the court on a petition for review of an opinion and order by the Referee in Bankruptcy dated May 29, 1973. Jurisdiction in this court is pursuant to § 39(c) of the Bankruptcy Act, as amended, 11 U.S.C. § 67(c).

The facts relevant to this controversy may be briefly stated as follows: The petitioner herein, United Virginia Bank/Security National, is the holder of two obligations upon which the bankrupt, Fred G. Saunders, Jr. and his wife are jointly liable. One of these is a note in the original amount of $602.04 with an unpaid balance of $467.61 plus costs as provided in the note. The other is a note and security agreement in the original amount of $4,674.00 which was initially secured by a lien on a 1972 Chevrolet. This automobile was repossessed and sold by petitioner leaving a deficiency of $1,065.65 plus costs as provided in the instruments.

The bankrupt and his wife are the owners as tenants by the entirety of certain real property. The Referee directed counsel to determine the value of this property and any liens against it as of January 8, 1973, the date of filing the petition in bankruptcy. The property was found to be subject to a first lien of $7,902.82 and a second lien of $4,076.10. The fair market value of the property was appraised at $12,500.00, thus leaving an equity in the property at the time of bankruptcy of $521.08. It is this equity interest which is the focus of controversy in this case. ·

Had the bankrupt been discharged from bankruptcy as provided in 11 U.S.C. § 32, the petitioner's ability to reach the property held as a tenancy by the entirety would have been eliminated. This follows from the fact that under Virginia law, property held by the entirety is not subject to the claims of individual creditors of one of the tenants;

nor can either spouse acting alone transfer an interest in the property. Vasilion v. Vasilion, 192 Va. 735, 66 S.E.2d 599 (1951). However, the petitioner in this case is the holder of notes signed by both the bankrupt and his wife, and thus could reach the property held as a tenancy by the entirety were it not for the intervening bankruptcy. Since the property was not subject to transfer by either spouse acting alone, it did not pass to the trustee in bankruptcy. 11 U.S.C. § 110(a)(5). Moreover, the discharge of the bankrupt would release him from all his provable debts (with certain exceptions not here relevant), 11 U.S.C. § 35, and thus prevent petitioner from obtaining a judgment against the bankrupt and his wife on the notes. This result could be avoided if petitioner were able to secure and record a judgment against the bankrupt and his wife since this would create a lien against the property which would not be affected by a subsequent discharge. Accordingly, petitioner sought to have the Referee delay the discharge until it could obtain and record a judgment against the bankrupt and his wife.

The Referee ordered that the discharge of the bankrupt be delayed in order that petitioner could proceed against the entirety property in state court. In so doing, he followed the decision in the case of Phillips v. Krakower, 46 F.2d 764 (4th Cir. 1931). This case was factually similar to the case at bar in that the creditor requested and was granted an opportunity to obtain judgment on a note executed by a bankrupt and his wife and enforce the same against property held by them as tenants by the entireties. The court viewed the granting of a discharge from bankruptcy without first allowing the creditor to proceed against the property held by the entireties as creating a "legal fraud" and a result "shocking to the conscience." 46 F.2d at 765. Accordingly, the court affirmed the order suspending the discharge in bankruptcy until the creditor could obtain and enforce a judgment in state court. The decision of the Supreme Court in Lockwood v. Exchange Bank, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903), was also cited as authority for this result. In that case, certain property of the bankrupt did not pass to the trustee for the benefit of his creditors because the property was exempt under state law and the Bankruptcy Act of 1898 provided that such property (exempted by state law) would remain in the bankrupt and not pass to the trustee. But the bankrupt had waived his exemption to the property in question, and it was thus subject to the claims of his creditors in state court. On such facts, the Supreme Court held that the bankruptcy court should defer granting a discharge in order to allow the creditor holding the waiver to preserve his rights in state court.

The Referee in the case at bar followed *Krakower* and *Lockwood* but recognized that in the present case the bankrupt had a limited "property" or "equity" interest in the tenancy by the entirety. He found that the actual interest of the bankrupt in the property at the time of bankruptcy was only $260.54 or one-half of the $521.08 equity of the bankrupt and his wife in the property. Because the bankrupt had such a limited interest, the Referee's order permitted petitioner to proceed *in rem* against the property in state court for $260.54. By so limiting the petitioner's rights in a state court proceeding, the Referee attempted to give effect to both the Bankruptcy Act and the equitable principles of *Lockwood* and *Krakower* Under the Bankruptcy Act, a discharge from bankruptcy relieves a bankrupt from his provable debts, 11 U.S.C. § 35, and relates back to the date of filing the petition in bankruptcy, with the trustee acquiring only property and interests belonging to the bankrupt at the time the petition is filed. 11 U.S.C. § 110, as amended (Supp.1973). Thus the Referee concluded that petitioner should be allowed to seek a state court judgment but that such a judgment would have to be *in rem* and limited to the bankrupt's equity of redemption as of the date of

filing the petition in bankruptcy. The Referee rejected the petitioner's proposal that it be allowed to encumber the entirety property to the full extent of the indebtedness of the bankrupt and his wife because such a decision would allow petitioner to reach the bankrupt's after-acquired equity in the property and nullify the effect of the discharge provisions of the Bankruptcy Act. It was also felt that such a result would require the bankrupt to relitigate and defend in other courts the validity of his discharge.

 This court is of the opinion that the Referee's disposition of this case was correct insofar as it found that the discharge of the bankrupt should be suspended in order that the petitioner could preserve its rights by obtaining and docketing a judgment in the state court. The bankrupt has urged that to delay a discharge in this case would violate the intent of the Bankruptcy Act and thus run afoul of the Supremacy Clause. In support of this proposition the bankrupt relies on the case of Harris v. Manufacturers National Bank of Detroit, 457 F.2d 631 (6th Cir.), cert. denied, 409 U. S. 885, 92 S.Ct. 118, 34 L.Ed.2d 142 (1972). In that case a bankrupt who had received a discharge in bankruptcy brought an action to enjoin a suit by a creditor in state court against him and his wife. Judgment was subsequently entered in a Michigan court, and the issue thus became whether the discharge in bankruptcy barred the execution of the judgment against the bankrupt and his wife. Under the law of Michigan as interpreted by its Supreme Court it had been held that a joint judgment against a husband and wife was unaffected by the husband's discharge in bankruptcy. The Court of Appeals of the Sixth Circuit held that the law of Michigan was in conflict with Section 17 of the Bankruptcy Act, 11 U. S.C. § 35 as amended (Supp.1973) and thus was unconstitutional under the Supremacy Clause of the Constitution. The case at bar is factually distinguishable from Harris in that what is involved here is not state law in conflict with the federal law, but rather an equitable remedy employed by the Referee in his discretion to give effect to the intent of the Bankruptcy Act. The remedy in this case has not been promulgated by the state and is not a matter of state law as was the case in Harris, and this fact alone is sufficient to distinguish the two cases. To extend the reasoning of Harris to the case at bar would require that this court avoid the decision by the Fourth Circuit in Phillips v. Krakower, supra, which is almost identical to this case. The fact that that case arose before passage of the 1938 Bankruptcy Act is not of crucial significance since the Fourth Circuit Court of Appeals has indicated in at least two relatively recent cases that the equitable remedy used in Krakower is still available. Roanoke Industrial Loan and Thrift v. Bishop, 482 F.2d 381 (4th Cir. 1973); Reid v. Richardson, 304 F.2d 351 (4th Cir. 1962). In light of these decisions this court is of the opinion that the Referee was within the limits of his equitable discretion in delaying the discharge in this case.

 This court is also of the opinion that the Referee was correct in seeking to limit the extent of the judgment which petitioner could obtain against the bankrupt. The Referee's decision was an attempt to reach a sensible compromise that would give effect to the discharge provisions of the Bankruptcy Act and also serve the equitable principles as set forth in *Lockwood* and *Krakower*. Where this court finds itself in disagreement with the Referee is with respect to his holding that petitioner be restricted to proceeding *in rem* in the state court and then only to the extent of $260.54. It is clear that in Virginia property held as a tenancy by the entirety cannot be partitioned and cannot be subjected to a judgment lien against only one of the tenants. Vasilion v. Vasilion, 192 Va. 735, 66 S.E.2d 599 (1951). In addition, petitioner contends that there is no procedure in Virginia whereby an *in rem* judgment can be ob-

tained against the bankrupt on the facts of this case. Va.Code Ann. § 8–520 (1957 Repl. Vol.). The right afforded petitioner by the Referee's order is thus no right at all. This court recognizes the reason for restricting the petitioner to an *in rem* proceeding but feels that a more realistic remedy could have been accomplished.

This court is of the opinion that petitioner should be able to proceed against the entire equity interest in the entirety property as of the date of bankruptcy, ($521.08) and that petitioner should be allowed to proceed *in personam* or otherwise. But should a judgment on the joint obligations of the bankrupt and his wife be obtained, any lien resulting therefrom should be enforceable only against this entirety property. The discharge which the bankrupt will eventually obtain should be made specifically applicable to any property or interest he might have obtained after January 8, 1973.

This court is aware that the holding in this case may put petitioner to a difficult choice. If the petitioner exercises the right to proceed against the bankrupt and his wife on their joint note for only the equity interest in the property as of the date of bankruptcy and establishes a judgment lien on the entirety property for that amount, it is possible that a subsequent action against the wife for the remainder of the alleged indebtedness would be barred by the doctrine of *res adjudicata* unless a state court were willing to make an exception in light of the dilemma created by this case. Unfortunately, the policy embodied in the Bankruptcy Act of permitting a bankrupt to begin anew, the equitable remedy recognized in *Krakower,* and the substantive state law relating to tenancies by the entirety when taken together do not lend themselves to a perfect result, but this court feels that the result reached herein is the best available under the existing circumstances.

A final issue presented to this court is whether the Referee erred in not considering the homestead deed filed by the bankrupt. It is, of course, clear that the Bankruptcy Act does not affect a homestead exemption prescribed by state law, 11 U.S.C. § 24, but it does not appear that it was necessary for the Referee to consider the affect of this deed. The homestead deed claimed by the bankrupt may be asserted in a state court proceeding instituted by the petitioner. Assuming that the homestead exemption is valid for purposes of state law, there is no reason why it cannot be given effect by the state court if and when the property in question is foreclosed. Accordingly, this court is of the opinion that the Referee did not err in failing to take into account the homestead deed filed by the bankrupt inasmuch as his opinion and order did not affect such exemption.

On the basis of what has been said above, this case is remanded to the Referee in Bankruptcy for modification and further disposition not inconsistent with this opinion.

It is so ordered.